**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **Textile Computer Systems, Inc.**, | Case No.: 6:21-cv-1051-ADA |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| **Charles Schwab Bank**, | |
| Defendant. | |

## DEFENDANT CHARLES SCHWAB BANK'S MOTION TO DISMISS ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

**TABLE OF CONTENTS**

**Page**

-i-

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ........................................................................................ 2

III.   TEXTILE FAILS TO STATE ANY CLAIM FOR RELIEF ............................ 4

    A.   Textile's Direct Infringement Allegations Require Third-Party Acts, and Textile Fails to Suggest, Let Alone Allege, Any Joint Infringement ....................................... 4

    B.   Textile's Induced Infringement Claims Fail; the Complaint Fails to Allege "Specific Intent" and Makes Only Insufficient General Allegations ............................ 9

    C.   Textile Has Not and Cannot Sufficiently Allege Contributory Infringement as the Accused Debit and Credit Cards Have Well-Established Non-Infringing Uses ......... 12

    D.   Textile Alleges No Facts Conceivably Supporting Any Willful Infringement Claim .................................................................................. 14

IV.    CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page**

CASES

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
   Case No. 13-cv-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ...............................10, 12

*Aguirre v. Powerchute Sports, LLC*,
   No. SA-10-cv0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ...............................11

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015)........................................................................................8, 9

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)..........................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................2, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................................2

*Benton v. WhitesellGreen, Inc.*,
   Civ. No. 6:19-cv-00241-ADA-JCM, 2020 WL 96906 (W.D. Tex. Jan. 8,
   2020) ..............................................................................................................................3, 8

*Bos. Sci. Corp. v. Nevro Corp.*,
   No. CV 16-1163-CFC, 2021 WL 4262668 (D. Del. 2021) ....................................................11

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ..........................................................................................3, 8

*Castlemorton Wireless, LLC v. Bose Corp.*,
   Case No. 6:20-cv00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020) .......................5

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011).............................................................................................8

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)...........................................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011). [ECF 1, Complaint ] ............................................................................11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016) ...........................................................................................................14, 15

*Inhale, Inc. v. Gravitron, LLC*,
   Case No. 1-18-cv-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) .........................15

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017) .............................................................................................8

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
   No. 6:17-cv-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) .......................3

*M & C Innovations, LLC v. Igloo Prod. Corp.*,
   Case No. 4:17-cv-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ................................15

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
   Case No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018) ........................15

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899 (Fed. Cir. 2014) ..............................................................................................10

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
   No. 6:20-cv-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ..........10, 12, 14, 16

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   Case No. 6:19-cv-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2009).....................9

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d
   1187 (9th Cir. 2001)................................................................................................................8

*Varian Med. Sys., Inc. v. Elekta AB*,
   No. 15-cv-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016).............................................3

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009).............................................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 2

## I.   INTRODUCTION

Defendant Charles Schwab Bank ("Schwab"), by and through its counsel, respectfully moves the Court to dismiss the Complaint of Textile Computer Systems, Inc. ("Textile") under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Textile brings this action against the wrong actor.  U.S. Patent Nos. 8,505,079; 8,533,802; 9,584,499; 10,148,659; and 10,560,454 (collectively, the "Asserted Patents") are directed to the use of debit and/or credit cards via mobile devices.  Textile's Complaint does not plausibly accuse Schwab of any alleged infringement of any of the claims of the Asserted Patents.  Nowhere does it allege that Schwab performs all elements of any claims as required for direct infringement; rather, it specifically links required claimed elements to third-party "Token Service Providers" such as Visa, MasterCard, American Express, or Discover.  Indeed, the figures relied upon by Textile in its Complaint undisputedly show that third parties, not Schwab, allegedly perform at least some of the claimed elements.  As Textile does not (and cannot) allege any joint infringement by Schwab and any third party (let alone any specific "Token Service Provider"), Textile's claims of direct infringement fail.

The indirect infringement claims asserted by Textile also fail.  With respect to Textile's inducement claim, there is no allegation of any fact that could plausibly show Schwab had any "specific intent" to encourage infringement—a necessary element for inducement.  And, for contributory infringement, Textile fails to sufficiently allege the absence of substantial non-infringing use; instead, Textile merely recites the legal element with no factual allegations at all.  Nor could Textile make such allegations.  It cannot be disputed that the accused debit and/or credit cards offered by Schwab have for many years been, and are still routinely, used by cardholders in numerous indisputably non-infringing transactions.

Finally, Textile fails to properly allege any purported willful infringement by Schwab, as its allegations are merely unsupported legal conclusions and do not comprise any allegations of any supposedly "egregious infringement behavior" by Schwab (nor any other conduct that could plausibly support any allegation of willful infringement).

Textile's allegations against Schwab are nearly identical to the deficient, cookie-cutter allegations made against numerous other accused banks.[1]  As with those allegations,  Textile's allegations against Schwab evidence that Schwab does not infringe.  Accordingly, this Court should dismiss Textile's Complaint in its entirety for failure to state a claim upon which relief may be granted.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege factual allegations that, if true, would "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A complaint is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"In evaluating the sufficiency of Plaintiff's complaint, the Court [] use[s] the two-step approach outlined in *Iqbal*.  First, the Court must identify pleadings that, because they are no

---

[1] E.g., compare ECF 1, Complaint against Charles Schwab Bank in Case No. 6:21-cv-1051, with ECF 1, Complaint against Broadway National Bank in Case No. 6:21-cv-1050, Count I at ¶¶ 21-32, ECF 1, Complaint against Comerica Bank in Case No. 6:21-cv-1052, Count I at ¶¶ 21-32 and ECF 1, Complaint against Independent Bank in Case No. 6:21-cv-1054, Count I at ¶¶ 21-32 and ECF 1, Complaint against Southside Bank in Case No. 6:21-cv-1056, Count I at ¶¶ 21-32 and ECF 1, Complaint against Texas Capital Bank in Case No. 6:21-cv-1057, Count I at ¶¶ 21-32 and ECF 1, Complaint against Vantage Bank Texas in Case No. 6:21-cv-1058, Count I at ¶¶ 21-32.

more than conclusions, are not entitled to the assumption of the truth." *Benton v. WhitesellGreen, Inc.*, Civ. No. 6:19-cv-00241-ADA-JCM, 2020 WL 96906, at *3 (W.D. Tex. Jan. 8, 2020) (internal citations omitted) (citing *Iqbal*, 556 U.S. at 678-79); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.").  "Under the second step, the Court must consider whether the factual allegations that have been asserted in the complaint plausibly suggest an entitlement to relief." *Benton*, 2020 WL 96906, at *3.  An entitlement to relief exists if a complaint's factual allegations "sufficiently articulate *how* [the] use of the product can be said to constitute infringement of at least [one] claim [] of the patent-in-suit." *Varian Med. Sys., Inc. v. Elekta AB*, No. 15-cv-871-LPS, 2016 WL 3748772, at *4 (D. Del. July 12, 2016) (emphasis in original), *report and recommendation adopted*, No. 15-cv-871-LPS, 2016 WL 9307500 (D. Del. Dec. 22, 2016).

A claim of direct infringement "require[s] a showing that each and every limitation set forth in a claim appears in the accused product." *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-cv-00143-RP-JCM, 2017 WL 9477677, at *3 (W.D. Tex. Nov. 28, 2017) (internal quotation marks omitted).  In emphasizing the "stringency of pleading requirements in cases alleging patent infringement," the Federal Circuit reiterated that "a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Bot M8*, 4 F.4th at 1346.

III.     **TEXTILE FAILS TO STATE ANY CLAIM FOR RELIEF**

A.     **Textile's Direct Infringement Allegations Require Third-Party Acts,
and Textile Fails to Suggest, Let Alone Allege, Any Joint Infringement**

Textile accuses Schwab of direct infringement in connection with "debit and/or credit cards" that are used by cardholders when making purchases with their smartphones, watches, or similar devices at a third-party merchant's point-of-sale device.  [ECF 1, Complaint at ¶¶ 23, 46, 70, 95, 119].  Specifically, the allegations are directed to Claim 1 of the '079 Patent, Claim 1 of the '802 Patent, Claim 3 of the '499 Patent, Claim 9 of the '659 Patent, and Claim 8 of the '454 Patent.  [*Id.* at ¶¶ 31-33, 35, 55-57, 59, 80-82, 84, 104-106, 108, 128-130, 132, 142].  Textile's direct infringement allegations for these claims fail because they require acts performed by third parties.  For instance, many of the acts underlying Textile's claims are allegedly performed by third-party credit card companies (such as Visa, MasterCard, American Express, and Discover), who act as "Token Service Providers."

Textile identifies acts relating to an "authorization server," a "messaging gateway," and a "server user interface" that are performed by the Token Service Providers, not Schwab.  Textile includes allegations relating to "an authorization server that processes the received request to identify the token value sent for the account selected to be charged that was passed from the authorized user to the merchant terminal via the NFC communication link."  [ECF 1, Complaint at ¶ 26; *see also id.* at ¶¶ 49 ("an authorization server that generates a token corresponding to the debit and/or credit card account number"), 73 ("an authorization server that generates a token corresponding to a secured resource during the provisioning process"), 100 ("a server that is programmed to identify within the payment authorization request the transaction specific information that was passed by the merchant, and the server will generate a cryptogram using at least some of that transaction specific information", 124 ("a server that is programmed to

identify within the payment authorization request the transaction specific information that was passed by the merchant, and the server will generate a cryptogram using at least some of that transaction specific information")].  But the very figures that Textile repeatedly relies upon in its Complaint undisputedly show that Schwab is not the entity with such a server.

In particular, as its only support for its allegations, Textile materially relies upon portions of a third-party, 2019 document purportedly from the U.S. Payments Forum.  [*Id*. at ¶¶ 23, 46, 70, 95, 119].  Textile does not allege any association or affiliation between Schwab and the U.S. Payments Forum, and Schwab is not a "member" of the third-party U.S. Payments Forum.  *See id.*; *see also* "Forum Members," *at* https://www.uspaymentsforum.org/membership/forum https://www.uspaymentsforum.org/membership/forum-members/members/ (last visited Jan. 10, 2022).[2]  With respect to the aforementioned "server" required by each of the Asserted Claims, the third-party U.S. Payments Forum document upon which Textile bases its allegations makes clear that the "server" that allegedly processes or generates tokens and cryptograms is controlled by the Token Service Providers and the Payment Networks.[3]

For example, Textile repeatedly, materially, and solely relies on Figures 5 and 6 of the third-party, U.S. Payments Forum document for the required claim elements.  [*Id*. at ¶¶ 23, 46, 70, 95, 119].  The U.S. Payments Forum's Figure 5, which purports to illustrate the process for setting up a smartphone or similar device for use with a debit or credit card – including

---

[2] The Court is required to "take all well-pleaded facts as true" when considering a motion to dismiss for failure to state a claim. *Castlemorton Wireless, LLC v. Bose Corp.*, Case No. 6:20-cv-00029-ADA, 2020 WL 6578418, at *4 (W.D. Tex. July 22, 2020).  Schwab does not concede that the third-party documentation and other allegations in Textile's Complaint are accurate and/or evidence any supposed infringement by Schwab.  Schwab reserves its right to contest the accuracy, relevance, and materiality of any and all "facts" alleged by Textile.

[3] Under the nomenclature adopted by third-party U.S. Payments Forum, Schwab would be neither a "token service provider," nor a "payment network."  "EMV Payment Tokenization Primer and Lessons Learned," Version 1.0, pp. 40-42, *at* https://www.uspaymentsforum.org/wpcontent/uploads/2019/06/EMV-Payment-Tokenization-Primer-Lessons-Learned-FINAL-June2019.pdf (last visited Jan. 10, 2022).

generating a "payment token" – is reproduced below with annotations showing the expressly delineated third-party "Token Service Provider" identified as Visa, American Express, MasterCard, and Discover.



**Annotated U.S. Payments Forum Figure 5**

[*Id*. at ¶¶ 23, 46, 70, 95, 119 (red annotations added) ("2.  The TSP creates an inactive token corresponding to the card and an OTP.")].

Likewise, the U.S. Payments Forum's Figure 6 also shows the same nonparty "Token Service Provider" in connection with a transaction utilizing a smartphone or similar device that has been set up for use with a debit or credit card and having a "payment token."



**Annotated U.S. Payments Forum Figure 6**

[*Id*. at ¶¶ 23, 46, 70, 95, 119 (red annotation added) ("3.  The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.  4.  The TSP verifies the cryptogram and returns the clear PAN to the payment network." (footnote omitted)); *compare id.* ¶ 23 *with* ¶ 26; ¶ 46 *with* ¶ 49; ¶ 70 *with* ¶ 73; ¶ 95 *with* ¶ 101; ¶ 119 *with* ¶ 124].

Any accused "server" falling within Textile's attempted application of the Asserted Claims is unquestionably a "server" of the disclosed and alleged third-party Token Service Provider – <u>not</u> Schwab.

Textile further alleges that the "server" is located "behind the firewall of the messaging gateway" such that they are associated with the same third party.  [*See id.* at ¶ 26].  And, the same is true for Textile's allegations concerning the supposed "server user interface."  [*See id.* at ¶ 27 ("the authorization server includes an interface")].  As alleged by Textile, the "Token Service Provider" – <u>not</u> Schwab – provides the accused alleged "server," "messaging gateway,"

*and* "interface."  These allegations are directly contradictory to Textile's unsupported and conclusory statements that such elements are somehow "hosted directly by Schwab."  [*See* ECF 1, Complaint, ¶¶ 25-27, 48-50, 72-77, 97-102, 121-126].  Even when considering a motion to dismiss, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Bot M8*, 4 F.4th at 1346.

Textile argues that the "server" and other claimed elements are "either hosted directly by Schwab or through an agent with whom Schwab has contracted to provide [the element/limitation]."  [ECF 1, Complaint at ¶¶ 25-27, 48-50, 72-77, 97-102, 121-126].  Yet, those statements are inconsistent with U.S. Payments Forum's Figures 5 and 6 relied upon by Textile, are unsupported by any allegations of fact, and are the type of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that are not entitled to the assumption of the truth.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *Benton*, 2020 WL 96906, at *3.

The allegations made by Textile relating to acts of third parties are fatal to Textile's Complaint because Textile has not alleged any direct infringement of all elements of the asserted claims by Schwab.  There are no factual allegations that Schwab somehow provides debit and/or credit cards having all of the claimed elements and limitations (*see, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)), that Schwab conceivably "put the [alleged] invention into service" (*see, e.g., Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)), and/or that Schwab purportedly benefits from "each and every element of the claimed system" (*see, e.g., Intell. Ventures I LLC v. Motorola*

*Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017)).  Further, Textile's Complaint sets forth no allegations of fact that plausibly support any joint infringement claim.  The Complaint never uses the phrase "joint infringement."  Moreover, there are no allegations of fact that Schwab purportedly "directs or controls others' performance" or that Schwab and any third parties somehow "form a joint enterprise," as would be required for joint infringement.  *Akamai Techs.*, 797 F.3d at 1022.  Indeed, the only use of "joint" in the Complaint is a single reference to Schwab and its undefined "affiliates" allegedly being "jointly and severally liable," which does nothing to support a claim of joint infringement based on the acts of third-party Token Service Providers. [ECF 1, Complaint at ¶¶ 3, 7].  And, Textile offers only a formulaic, conclusory, illogical, and non-specific statement of direction and control of "the use of the Accused Instrumentality," not the direction or control of the performance of others.  [*Id*. at ¶ 146 ("Charles Schwab directs or controls the use of the Accused Instrumentality nationwide through its own websites and in its own branches, including in Texas and elsewhere in the United States, and expects and intends that the Accused Instrumentality will be so used.")].

Textile's direct infringement claims are wholly deficient and should be dismissed.

B.    **Textile's Induced Infringement Claims Fail; the Complaint Fails to Allege "Specific Intent" and Makes Only Insufficient General Allegations**

Inducement requires knowledge not only of the asserted patents, but also a specific intent to encourage infringement of another's patent(s).  Textile's Complaint is devoid of any factual allegations, fairly read, that could arguably show any "specific intent" by Schwab.

An induced infringement allegation requires:  (i) knowledge of the Asserted Patents; (ii) knowing inducement of a third party to infringe the Asserted Patents; (iii) specific intent to induce the third party to infringe; and (iv) the third party directly infringes as a result of the inducement.  *See Parity Networks, LLC v. Cisco Sys., Inc.*, Case No. 6:19-cv-00207-ADA, 2019

WL 3940952, at *2 (W.D. Tex. July 26, 2009); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d

1293, 1305 (Fed. Cir. 2006) (cited portion considered *en banc*).  The requirement of "specific

intent" means not simply that the defendant knew of the patent and intended to induce a third

party's actions that allegedly infringe, but that the defendant also had an affirmative intent to

cause infringement.  *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014)

("[T]he patentee must show that the accused inducer took an affirmative act to encourage

infringement with knowledge that the induced acts constitute patent infringement."); *Affinity

Labs of Tex., LLC v. Toyota Motor N. Am.*, Case No. 13-cv-365, 2014 WL 2892285, at *3 (W.D.

Tex. May 12, 2014) ("[A] claim of induced infringement 'must contain facts plausibly showing

that [the defendants] specifically intended their customers to infringe the [asserted] patent and

knew that the customer's acts constituted infringement.'") (second and third alterations in

original) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d

1323, 1339 (Fed. Cir. 2012)); *see also Monolithic Power Sys., Inc. v. Meraki Integrated Cir.

(Shenzhen) Tech., Ltd.*, No. 6:20-cv-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1,

2021) (dismissing complaint where plaintiff failed to allege facts showing a "specific intent to

induce the direct infringer").

Textile's Complaint does not allege that it provided Schwab with pre-filing notice of any

alleged infringement of any Asserted Patent.  Textile alleges only that Schwab was generally

aware of the '079 Patent and '802 Patent before Textile filed its Complaint, but does not even

suggest that Schwab acted with knowledge that the allegedly induced acts constituted any

infringement.  [ECF 1, Complaint at ¶¶ 40, 64].  And, Textile does not allege any prefiling

knowledge of any kind with respect to the '499 Patent, '659 Patent, and '454 Patent.  [*Id*. at

¶¶ 89, 113, 137].  Without any allegation of knowledge of the '499 Patent, '659 Patent, and '454

Patent, Schwab cannot have an affirmative intent to cause any alleged pre-filing infringement of these patents.  Furthermore, Textile's reliance on its own Complaint to provide the requisite alleged knowledge is logically flawed.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-cv0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) ("To the extent [plaintiff] relies on knowledge of [the] patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement."); *see also Bos. Sci. Corp. v. Nevro Corp.*, No. CV 16-1163-CFC, 2021 WL 4262668 at *4 (D. Del. 2021) (finding "the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement and willfulness-based enhanced damages").[4]  Similarly, Textile's allegations that Schwab was generally aware of the '079 Patent and '802 Patent before the filing of Textile's Complaint is also insufficient to state a claim of inducement.  Such incomplete allegations neither suggest nor properly allege that Schwab knew that any induced acts could be alleged to infringe.[5]

Further, Textile's factual allegations concerning how Schwab allegedly induced infringement by third parties are impermissibly vague, general, and non-specific.  [*See, e.g.,* ECF 1, Complaint at ¶¶ 141-149].  An inducement claim must allege specific facts that demonstrate how the plaintiff maintains the inducement has occurred or is occurring.  "[G]eneralized allegations that [defendant] induced others to infringe … through its marketing and sales tactics are likewise insufficient." *Affinity Labs of Tex.*, 2014 WL 2892285, at *7.  Plaintiff's

---

[4] The logic and policy rationale laid out in the *Boston Scientific* decision are apt and warrant a similar holding here. 2021 WL 4262668 at *4 (explaining, for example, "'[t]he purpose of a complaint is to obtain relief from an existing claim and not to create a claim'' and that "the limited resources made available to our courts by Congress counsel against encouraging plaintiffs to create claims by filing claims.  It seems to me neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for indirect infringement and enhanced damages") (internal citations omitted).

[5] Plaintiff makes only conclusory statements, not factual allegations, concerning the alternative, willful blindness approach separately addressed in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). [ECF 1, Complaint at ¶¶ 33, 57, 82, 106, 130].

allegations, with an example reproduced below, do <u>not</u> identify any specific third parties, do <u>not</u> identify any specific acts taken (or not taken) by Schwab, and do <u>not</u> identify any facts showing how Schwab induced "others" to allegedly infringe.

> Schwab has indirectly infringed and continues to indirectly infringe (either literally or under the doctrine of equivalents) [], in violation of 35 U.S.C. § 271(b), by actively inducing the infringement of the [] Patent by others and Schwab will continue to do so unless enjoined by this Court.  Schwab's deliberate and/or willfully blind actions include, but are not limited to, *actively marketing to, supplying, causing the supply to, encouraging, recruiting, and instructing others such as consumers, businesses, distributors, agents, sales representatives, end-users, account holders and customers to use, make available for another's use, promote, market, distribute, import, sell and/or offer to sell the Accused Instrumentality*.  These actions, individually and/or collectively, have induced and continue to induce the direct infringement of the [] Patent by others such as consumers, businesses, distributors, agents, sales representatives, end-users, account holders and customers.  Schwab knew and/or was willfully blind to the fact that the induced parties' use, making available for another's use, promotion, marketing, distributing, importing, selling and/or offering to sell the Accused Instrumentality would infringe the [] Patent.

[ECF 1, Complaint at ¶¶ 33, 57, 82, 106, 130 (emphasis added); *see also id.* at ¶¶ 147-155].

These are exactly the "generalized allegations that [defendant] induced others to infringe … through its marketing and sales tactics" that this Court has held are insufficient.

Textile's induced infringement claims should be dismissed.

C. **Textile Has Not and Cannot Sufficiently Allege Contributory Infringement as the Accused Debit and Credit Cards Have Well-Established Non-Infringing Uses**

"A complaint only satisfies the elements of contributory infringement by alleging that: (1) defendant had knowledge of the patent; (2) defendant sold products especially made for infringing use; (3) defendant had knowledge of the infringing use; (4) the products had no

substantial noninfringing use; and (5) there exists an underlying act of direct infringement." *Monolithic Power Sys.*, 2021 WL 3931910, at \*5.

For the reasons described above, Textile has failed to sufficiently allege knowledge of the '499 Patent, '659 Patent, and '454 Patent.  This alone warrants dismissal of Textile's claims of contributory infringement of these patents.

Additionally, for all Asserted Patents, Plaintiff does not, and cannot, allege facts showing that the accused debit cards and/or credit cards have no "substantial noninfringing use" or are somehow "especially made or especially adapted" for infringing use.  Plaintiff's allegations are merely conclusory legal assertions lacking any factual support. [ECF 1, Complaint at ¶¶ 35, 59, 84, 108, 132, 150-154].  This is unsurprising.  Textile accuses credit and/or debit cards of allegedly infringing the Asserted Patents, and those accused credit or debit cards are well-known, conventional products that cardholders may use in myriad non-infringing ways including, for example, swiping the card at a merchant point-of-sale terminal, inserting the card into a "chip reader" at a merchant point-of-sale terminal, or manually entering card information in the course of an online transaction.  All of these are substantial non-infringing uses.

In an attempt to avoid the true nature of the accused debit cards and/or credit cards, Textile purports to define "Accused Instrumentality" narrowly so that it arguably includes only allegedly infringing uses of the accused cards.  [*Id.* at ¶¶ 23, 46, 70, 95, 119 (defining "Accused Instrumentality" as debit and/or credit cards "that are used with an authentication system that authenticates the identity of a Schwab card holder in a request to a pay a merchant for a transaction")].  However, that attempt fails because the non-infringing aspects are "defining features" of the accused cards and "not merely additional, separable features." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327-28 (Fed. Cir. 2009) (affirming summary judgment of

no contributory infringement because "no reasonable jury could find [the accused product's non-infringing use] is an insubstantial use").  Any attempt to use semantics to try to avoid substantial noninfringing uses should be rejected.

Further, for the same reasons set forth above with respect to induced infringement – namely, that Textile has not alleged facts showing that Schwab knew that its cardholders' acts could be alleged to constitute patent infringement – Plaintiff has not alleged any facts showing that "defendant had knowledge of the infringing use" as required for a contributory infringement claim.  *Supra*, Section III(B).

Textile's contributory infringement claims should be dismissed.

### D.    Textile Alleges No Facts Conceivably Supporting Any Willful Infringement Claim

Willful infringement is not typical infringement, rather it is "egregious infringement behavior" in the form of conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016).  A claim of willful infringement, therefore, must be supported by allegations of "facts plausibly showing that as of the time of the claim's filing, the accused infringer (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so it knew, or should have known, that its conduct amounted to infringement of the patent." *Monolithic Power Sys.,* 2021 WL 3931910, at *5 (internal citation omitted).  Plaintiff Textile has not sufficiently pled willful infringement.

Here, the only references to willfulness in the Complaint are inadequate, perfunctory and conclusory statements.  For example, in connection with each enumerated Count, Textile merely states:

> Charles Schwab has also indirectly and willfully infringed, and
> continues to indirectly and willfully infringe, the [] Patent, as

explained further below in the 'Additional Allegations Regarding Infringement' section.

[ECF 1, Complaint at ¶¶ 41, 65, 90, 114, 138].  Textile's so-called "Additional Allegations

Regarding Infringement" section likewise asserts only the same general legal conclusion:

> Schwab's direct and indirect infringement of the 079 Patent, the 802 Patent, the 499 Patent, the 659 Patent, and the 454 Patent is, has been, and/or continues to be willful, intentional, deliberate, and/or in conscious disregard of Textile' rights under the patents.

[*Id.* at ¶ 159; *see also id.* ¶ 155-158].  Broad legal conclusions cannot support a willful

infringement claim.  *Inhale, Inc. v. Gravitron, LLC*, Case No. 1-18-cv-762-LY, 2018 WL

7324886, at *3 (W.D. Tex. Dec. 10, 2018) (granting dismissal where plaintiff only asserted

"'legal conclusion[s] couched as … factual allegation[s]' that the court need not accept as true.")

(alterations in original) (quoting *Twombly*, 550 U.S. at 555).

Textile also fails to allege any purported "egregious infringement behavior" by Schwab

nor any conduct that could even charitably be viewed as "characteristic of a pirate."  *See Halo*

*Elecs.*, 579 U.S. at 103-104.  Instead, Textile asserts only "run-of-the-mill" alleged infringement.

[*See, e.g.*, ECF 1, Complaint at ¶¶ 31-35, 147-166].  Such assertions do not and cannot support a

claim of willful infringement.  *Halo Elecs.*, 579 U.S. at 103-104; *Meetrix IP, LLC v. Cisco Sys.,*

*Inc.*, Case No. 1-18-CV-309-LY, 2018 WL 8261315, at *3 (W.D. Tex. Nov. 30, 2018) ("Cisco

argues that Meetrix's complaint fails to state a claim for willful infringement because the

complaint does not allege any facts raising a plausible inference of the egregious behavior

required under Halo.  The court agrees."); *M & C Innovations, LLC v. Igloo Prod. Corp.*, Case

No. 4:17-cv-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018).

Likewise, because there are no such facts, there are no allegations that Schwab

purportedly "acted despite a risk of infringement that was either known or so obvious that it

should have been known." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d

1350, 1371 (Fed. Cir. 2017) (internal citations and quotation marks omitted).  Textile fails to allege that Schwab had notice that its conduct amounted to any alleged infringement of the Asserted Patents (*see* ECF 1, Complaint at ¶¶ 40, 64, 89, 113, 137), and its deficient allegations fail to support any willful infringement claim.  *Monolithic Power Sys.*, 2021 WL 3931910, at *5 (dismissing willful infringement claims where the alleged infringer had "knowledge of the asserted patents" but was not alleged to "[know] their conduct amounted to infringement."). Textile's willful infringement claims should be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Schwab National Bank respectfully requests that the Court dismiss Plaintiff Textile Computer Systems' Complaint and grant such additional and further relief as the Court deems just under the circumstances.

Dated: January 10, 2022

Respectfully submitted,

 /s/ *Hilda C. Galvan*
Hilda C. Galvan
Lead Attorney
Texas State Bar No. 00787512
Email:  hcgalvan@jonesday.com
Keith B. Davis
Texas State Bar No. 24037895
Email:  kbdavis@jonesday.com
Christopher A. Buxton
Texas State Bar No. 24116154
Email:  cbuxton@jonesday.com
JONES DAY
2727 N. Harwood Street, Suite 500
Dallas, TX 75201-1515
Telephone:  (214) 220-3939
Facsimile:   (214) 969-5100

*Attorneys for Defendant Charles Schwab
Bank, SSB*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on January 10, 2022.

By: */s/ Hilda C. Galvan*
Hilda C. Galvan