**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| TEXTILE COMPUTER SYSTEMS, INC., | CIVIL ACTION NO. 6:21-cv-1051-ADA |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| CHARLES SCHWAB BANK, | |
| Defendant. | |

**TEXTILE COMPUTER SYSTEMS, INC.'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   TEXTILE SUFFICIENTLY PLEADED DIRECT INFRINGEMENT ...................................2

    A.    Textile's Complaint Plausibly Alleges Direct Infringement By Schwab
        Alone Through Use Of Its Own Equipment And Use Of Its Agents' Equipment........... 4

        1.    Direct Infringement Through Use Of Its Own Equipment ...................................... 4

        2.    Direct Infringement Through Use Of Its Agents' Equipment................................. 6

        3.    Schwab's Arguments To The Contrary Are Misguided.......................................... 6

    B.    Textile's Complaint Plausibly Alleges Direct Joint Infringement By
        Schwab ....................................................................................................... 8

III.  TEXTILE SUFFICIENTLY PLEADED INDIRECT AND WILLFUL
      INFRINGEMENT ............................................................................................9

    A.    Textile Plausibly Alleged Knowledge And Conduct In Support Of Its
        Allegations Of Indirect Infringement And Willful Infringement ................................... 9

    B.    Textile Plausibly Alleged Schwab's Specific Intent To Induce
        Infringement................................................................................................. 11

    C.    Textile Plausibly Alleged Contributory Infringement ..................................... 13

    D.    Textile Plausibly Alleged Willful Infringement............................................... 17

IV.   IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED...................................19

V.    CONCLUSION ..............................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
No. W:13-cv-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ................................ 10, 12

*Aguirre v. Powerchute Sports, LLC*,
No. SA-10-cv-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ............................ 10

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) (en banc).............................................................................. 8

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)............................................................................................ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................... 2, 7

*Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*,
No. 1-17-CV-291-LY, Dkt. No. 37 (W.D. Tex. Mar. 14, 2018) ........................................ 2, 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................... 2, 3, 7

*Benton v. Whitesell-Green, Inc.*,
No. 6:19-cv-00241-ADA-JCM, 2020 WL 96906 (W.D. Tex. Jan. 8, 2020)......................... 7

*Bos. Sci. Corp. v. Nevro Corp.*,
No. CV 16-1163-CFC, 2021 WL 4262668 (D. Del. 2021) .................................................. 10

*Bot M8 LLC v. Sony Copr. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ............................................................................................... 5

*Bush Seismic Techs. LLC v. Am. Gem Soc.*,
No. 2:14-cv-1809-JRG, 2016 WL 9115381 (E.D. Tex. Apr. 13, 2016) ............................... 19

*Cywee Group Ltd. v. Huawei Device Co. Ltd.*,
No. 2:17-cv-495-WCB, 2018 WL 3819392 (E.D. Tex. Aug. 10, 2018) ........................ 10, 12

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3d 1256 (Fed. Cir. 2018)............................................................................................. 3

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006)........................................................................................... 13

*Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*,
   No. 2:16-cv-00553, Dkt. No. 45 (E.D. Tex. Feb. 14, 2017) ............................................. 2, 3

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
   2018 WL 2149736 (E.D. Tex. 2018) .................................................................................. 18

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ........................................................................................... 15

*Georgetown Rail Equipment Co. v. Holland L.P.*,
   876 F.3d 1350 (Fed. Cir. 2017) ............................................................................................. 6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ............................................................................................................ 10

*Griggs v. Hinds Junior Coll.*,
   563 F.2d 179 (5th Cir. 1977) .............................................................................................. 20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) .................................................................................................. 18, 19

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ........................................................................................... 10

*Inhale, Inc. v. Gravitron, LLC*,
   No. 1-18-cv-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ................................. 19

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) ............................................ 8, 9

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
   656 F. App'x 504 (Fed. Cir. 2016) ...................................................................................... 15

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017) ........................................................................................... 14

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .............................................................................................. 14

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ........................................................................................ 14, 15

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ........................................................................................... 15

iv

*M&C Innovations, LLC v. Igloo Prods. Corp.*,
    No. 4:17-cv-2372, 2018 WL 4260713 (S.D. Tex. Jul. 31, 2018) .................................. 18, 19

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
    No. 1-18-cv-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018) .......................... 18, 19

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) ..................................................................................... 12, 13

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
    No. 6:20-cv-00876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ..................... 12, 17

*Motiva Patents, LLC v. Sony Corp.*,
    408 F. Supp. 3d 819 (E.D. Tex. 2019) .................................................................. 11, 12, 14

*Packet Intel. LLC v. NetScout Sys., Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020) .......................................................................................... 10

*Parity Networks, LLC v. Cisco Sys., Inc.*,
    No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. Jul. 26, 2019) .............. 13, 18, 19

*Potter v. Bexar Cnty. Hosp. Dist.*,
    195 Fed. Appx. 205 (5th Cir. 2006) .................................................................................. 20

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008) .......................................................................................... 15

*Script Security Solns. L.L.C. v. Amazon.com, Inc.*,
    170 F. Supp. 3d 928 (E.D. Tex. 2016) .............................................................................. 17

*SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH*,
    839 F.3d 422 (5th Cir. 2016) ............................................................................................. 20

*Sprewell v. Golden State Warriors*,
    266 F.3d 1187 (9th Cir. 2001) ............................................................................................. 5

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) .......................................................................................... 18

*Techno View IP, Inc. v. Sony Interactive Entertainment LLC*,
    No. SACV 17-01268-CJC (JCGx), 2018 WL 3031518 (C.D. Cal. Apr. 18, 2018) ............... 9

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017) ........................................................................................... 8

*Uniloc USA, Inc. v. Avaya Inc.*,
    No. 6:15-CV-01168-JRG, 2016 WL 7042236 (E.D. Tex. May 13, 2016) ............................ 2

*Valinge Innovation AB v. Halstead New England Corp.*,
    2018 WL 2411218 (D. Del. May 29, 2018)..................................................................... 18, 19

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)...................................................................................... 16, 17

**Statutes and Other Authorities**

Fed. R. Civ. P. 8(a)(2).................................................................................................... 3, 15

Fed. R. Civ. P. 15(a) ........................................................................................................... 20

## I.      INTRODUCTION

Schwab charges that "Textile's allegations against Schwab are nearly identical to the deficient, cookie-cutter allegations made against numerous other accused banks," referring to the complaint's allegations as "illogical," "inadequate," and "perfunctory."  Mot. at 2, 9, 14.  This charge is ironic in light of Schwab's apparent "cookie-cutter" approach to its motion to dismiss, nearly duplicating Comerica's motion to dismiss (including, as noted below at n.4, arguments against allegations that are ***not even in Textile's complaint*** against Schwab).  And even if Schwab was correct in seeking to dismiss the complaint, these allegations would still be unfounded and inappropriate.  But not only is Schwab wrong, it is not even close to being right.  For example, in its Introduction, Schwab states that "Textile brings this action against the wrong actor."  But ***every single step*** of Schwab's analysis in support of that statement is ***fundamentally wrong***.

| Schwab Argument (Mot. at 1) | Response |
|---|---|
| "[The asserted patents] are directed to the use of debit and/or credit cards via mobile devices." | Wrong.  The asserted patents are directed to payment processing systems that authenticate and authorize attempted payments. *See, e.g.*, Compl. ¶¶ 11, 13, 14. |
| "Textile's Complaint does not plausibly accuse Schwab of any alleged infringement of any of the claims of the Asserted Patents." | Wrong.  The complaint specifically accuses ***Schwab*** of directly infringing at least exemplary claims of all asserted patents through use of the accused payment authorization system.  *See, e.g.*, Compl. ¶¶ 23, 31-32. |
| "Nowhere does it allege that Schwab performs all elements of any claims as required for direct infringement; rather, it specifically links required claim elements to third-party 'Token Service Providers' such as Visa, MasterCard, American Express, or Discover." | Wrong.  The complaint specifically accuses ***Schwab*** of directly infringing ***every single element***, explains how each element is present in the accused payment authorization system, and alleges that Schwab infringes exemplary claims through use of the accused payment authorization system.  *See, e.g.*, Compl. ¶¶ 23, 24-29, 31-32. |

1

| Schwab Argument (Mot. at 1) | Response |
|---|---|
| "Indeed, the figures relied upon by Textile in its Complaint undisputedly show that third parties, not Schwab, allegedly perform at least some of the claimed elements." | Wrong. Nowhere does the complaint allege that a third party **must** host any services or be involved in Schwab's use of the accused payment authorization system. While the figures show logos from third parties, they do not **require** those parties. |
| "Textile does not (and cannot) allege any joint infringement by Schwab and any third party (let alone any specific 'Token Service Provider')[.]" | Wrong.  The complaint alleges joint infringement involving Schwab and its affiliates, its contracted agents, its customers, payment networks, and/or financial institutions.  *See, e.g.*, Compl. ¶¶ 3, 4, 6, 25-27, 142, 143. |

Likewise, Schwab is clearly wrong in asserting that willful infringement requires "egregious infringement behavior" that is "characteristic of a pirate."  The Federal Circuit has unambiguously held that egregious conduct is not an element of willfulness.  And Schwab's arguments regarding indirect infringement either ignore or mischaracterize allegations of the complaint that state a plausible claim for induced infringement and contributory infringement.

## II.    TEXTILE SUFFICIENTLY PLEADED DIRECT INFRINGEMENT

Textile has met the *Twombly* and *Iqbal* pleading requirements to support a plausible claim of direct infringement.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  A complaint for direct patent infringement "must explicitly plead facts to plausibly support the assertion that a defendant 'without authority, makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-CV-01168-JRG, 2016 WL 7042236, at *2 (E.D. Tex. May 13, 2016).  While courts have not announced "a floor for the direct infringement standard," the pleading requirement is where the plaintiff: (1) identifies the allegedly infringing products; (2) describes the patent; and (3) describes the corresponding accused technology.  *See Baker Hughes Oilfield Operations, Inc. v. Prod. Tool*

*Sol., Inc.*, No. 1-17-CV-291-LY, Dkt. No. 37, at 3 (W.D. Tex. Mar. 14, 2018); *see also Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*, No. 2:16-cv-00553, Dkt. No. 45, at 4 (E.D. Tex. Feb. 14, 2017) (pleading requirement met where the plaintiff (1) alleges that a specific product infringes a specific claim, (2) alleges that the product meets all the elements of a specific claim, and (3) incorporates by reference a website illustrating the accused product).

Textile's allegations against Schwab for these patents go well beyond what *Baker Hughes* and *Dynocom* found sufficient.  For each of the asserted patents, Textile has:

(a)    alleged that specific Schwab products and services, identified as the accused instrumentality, were involved in Schwab's infringement of specific claims (*see, e.g.*, Compl. at ¶¶ 23, 24, 31, 32, 46, 47, 55, 56, 70, 71, 80, 81, 95, 96, 104, 105, 119, 120, 128, 129) (identifying the accused authentication/authorization system that is implemented with EMVCo compliant tokens and enables Schwab to offer services like the Apple Pay service, the Samsung Pay service, and the Google Pay service (hereinafter "the accused payment authorization system") as specific instrumentalities ***were used by Schwab*** to infringe Claim 1 of the 079 Patent, Claim 1 of the 802 Patent, Claim 3 of the 499 Patent, Claim 9 of the 659 Patent, and Claim 8 of the 454 Patent);

(b)    alleged that Schwab infringed each element of specific claims with respect to the accused payment authorization system (*see, e.g.*, Compl. at ¶¶ 24-30 (allegations regarding each element of Claim 1 of the 079 Patent); ¶¶ 47-54 (allegations regarding each element of Claim 1 of the 802 Patent); ¶¶ 71-79 (allegations regarding each element of Claim 3 of the 499 Patent); ¶¶ 96-103 (allegations regarding each element of Claim 9 of the 659 Patent); and ¶¶ 120-127 (allegations regarding each element of Claim 8 of the 454 Patent);

(c)    included screenshots to help identify the accused payment authorization system involved in Schwab's infringement by identifying the services that Schwab is able to provide by using the accused instrumentality (*see, e.g.*, Compl. at ¶¶ 23, 46, 70, 95, and 119 (screenshots of the Schwab website's "debit card" page that has a link to "Mobile Wallet FAQs," a page that states "[t]here are different types of mobile wallets Charles Schwab Bank offers," mentioning services like the Apple Pay service, the Samsung Pay service, and the Google Pay service)); and

(d)    identified specific features of the accused payment authorization system involved in Schwab's infringement (*see, e.g.*, Compl. at ¶¶ 23, 46, 70, 95, and 119).

As the preceding paragraphs show, Textile has more than satisfied Rule 8's requirements for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). Textile is only required to present "enough fact[s] to raise a reasonable expectation that discovery will reveal" that Schwab is liable for patent infringement. *See Twombly*, 550 U.S. at 556; *see also Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing dismissal of complaint where allegations "specifically identified the three accused products" and alleged that the products "meet 'each and every element of at least one claim'").

In the face of Textile's well-pleaded allegations of direct infringement, Schwab appears to argue that the allegations are insufficient because Schwab believes that another party is also responsible for the alleged infringement—a belief that is, of course, irrelevant at this stage.  For example, Schwab argues that the complaint's allegations of direct infringement "require third-party acts, and Textile fails to suggest, let alone allege, any joint infringement."  Mot. at 4-9. These arguments are incorrect.

### A.   Textile's Complaint Plausibly Alleges Direct Infringement By Schwab Alone Through Use Of Its Own Equipment And Use Of Its Agents' Equipment

#### 1.   *Direct Infringement Through Use Of Its Own Equipment*

Schwab argues that the complaint's allegations of direct infringement regarding the claim elements "messaging gateway," "server," "one or more servers," "interface," and "service user interface" are improper as to Schwab alone because the allegations "require acts performed by third parties."  Mot. at 4.  This argument is incorrect in at least two respects.

First, Schwab is incorrect that allegations regarding the elements at issue ***require*** anyone other than Schwab.  Textile's complaint pleads in the alternative, as it is entitled to do, that each of those claim elements is "either ***hosted directly by Schwab*** or through an agent with whom Schwab has contracted."  (*See, e.g.*, Compl. at ¶¶ 25, 26, 27, 48, 49, 50, 72, 73, 74, 75, 76, 77, 97, 98, 99, 100, 101, 102, 121, 122, 123, 124, 125, 126) (emphasis added).

Schwab feels free to ignore the allegations that these elements are "hosted directly by Schwab" because, Schwab argues, the allegations are inconsistent with an inference that Schwab

makes from a high-level U.S. Payment Forums document[1] cited in the complaint,[2] the inference being that "many of the acts underlying Textile's claims are allegedly performed by third-party credit card companies (such as Visa, MasterCard, American Express, and Discover), who act as 'Token Service Providers.'" Mot. at 4. But the same document contradicts Schwab's assertion, noting that "[t]he tokenization service is offered by a token service provider (TSP), which is typically a payment network, an acquirer, a third-party service provider, *or an issuer*." Ex. A, https://www.uspaymentsforum.org/wp-content/uploads/2019/06/EMV-Payment-Tokenization-Primer-Lessons-Learned-FINAL-June-2019.pdf at 8 (emphasis added). So, even if the figures from the U.S. Payments Forum document represented every possible implementation of an EMVCo compliant payment system (they do not), then Schwab, an issuer of debit and/or credit cards, would still be wrong. In any event, the U.S. Payments Forum document is used in the complaint only to illustrate exemplary implementations of a payment system *that Schwab*

---

[1] Schwab incorrectly concludes that this document is Textile's "only support for its allegations," that "Textile materially relies upon portions" of the document, and that "Textile repeatedly, materially, and solely relies on Figures 5 and 6" of the document "for the required claim elements." Mot. at 5. In doing so, Schwab simply ignores pages of factual allegations and citations to Schwab's website, as detailed above, all of which describe how Schwab's use of the accused instrumentality meets each claim element. *See, e.g.*, Compl. at ¶¶ 23-30; ¶¶ 46-54; ¶¶ 70-79; ¶¶ 95-103; and ¶¶ 119-127.

[2] Schwab cites *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) and *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) in support of its argument that it can ignore allegations it deems to be inconsistent with its inference about the U.S. Payment Forums document, but those cases involve pleadings very different from Textile's complaint. For example, in *Bot M8*, the complaint pled an allegation so contrary to the claims of one patent that the court said its infringement claim was "not even possible, much less plausible," and with respect to another patent, failed to plead *any* allegations about one of the claim elements. 4 F.4th at 1354-55. In *Sprewell*, an arbitration award including its own factual allegations was attached to the complaint, and the court found that the arbitration award's allegations "fatally undermined Sprewell's section 1981 claim" because it included the arbiter's findings that the NBA's punishment of Sprewell was motivated "solely by Sprewell's misconduct" and not for racist reasons as alleged by Sprewell. 266 F.3d at 988-989. Here, the U.S. Payment Forums document does not contradict the allegations of the complaint, even under Schwab's view that the document requires multiple parties, because it does not in any way contradict the complaint's allegation that Schwab *contracts with agents* to host the services. *Infra* at Section 2.

*implements and/or uses*.  The complaint never represents the document to be the ***only possible implementation*** of an EMVCo compliant payment system that enables use of the Apple Pay service, the Samsung Pay service, or the Google Pay service, nor does the document hold itself out to be.  As such, there is no inconsistency in the complaint, which has plausibly alleged direct infringement through Schwab's use of the accused payment authorization system with equipment that Schwab hosts.

### 2. *Direct Infringement Through Use Of Its Agents' Equipment*

Even if the allegations regarding the elements at issue ***require*** acts by someone other than Schwab, the allegations of the complaint plausibly support theories of direct infringement where Schwab does not own every component of the accused instrumentality, including that Schwab alone directly infringes by conducting the alleged actions through its ***agents*** who are under contract to perform or provide those elements ***on behalf of*** Schwab.

"[D]irect infringement by use of a system claim requires a party to use each and every element of a claimed system," but that "does not require a party to 'exercise physical or direct control over each individual element of the system.'"  *Georgetown Rail Equipment Co. v. Holland L.P.*, 867 F.3d 1229, 1239 (Fed. Cir. 2017).  The complaint alleges, with respect to the elements mentioned in Schwab's motion, that each of those claim elements is "either ***hosted directly by Schwab*** or ***through an agent with whom Schwab has contracted to [provide or perform the element]***."  (*See, e.g.*, Compl. at ¶¶ 25-27, 48-50, 72-77, 97-102, 121-126) (emphasis added).  Those servers, interfaces, and gateways are alleged to be part of the accused payment authorization system ***that Schwab uses***.  Thus, Textile has plausibly alleged direct infringement by Schwab alone through Schwab authorizing payments using the accused payment authorization system with equipment that Schwab's contracted agents host.

### 3. *Schwab's Arguments To The Contrary Are Misguided*

In the face of these allegations of direct infringement, Schwab argues that the complaint does not allege direct infringement by Schwab alone because, it says, there are no allegations (1)

that the debit and/or credit cards themselves have all claim elements, (2) that Schwab "put the alleged invention into service," or (3) that Schwab benefits from "each and every element of the claimed system."  Mot. at 8-9.  All three arguments are misguided.[3]

First, it is irrelevant whether the debit and/or credit cards themselves have all claim elements because, as explained above, the accused instrumentality is not debit and/or credit cards, but the accused payment authorization system.  As defined in the complaint, Schwab's use of the accused instrumentality meets all claim elements.

Second, the complaint does accuse Schwab of putting the invention into service by offering and using the accused payment authorization system and either hosting the servers, gateways, and interfaces, or contracting for others to host them.

Third, of course Schwab benefits directly from its use of the system: Schwab recovers a fee from merchants for every transaction approved by the accused payment authorization system, and Schwab also benefits from interest and fees it charges its customers and from obtaining additional deposits, which is why Schwab, on its website, prominently advertises the services it is able to offer because of its use of the accused system.  *See* Compl. ¶¶ 23, 46, 70, 95, and 119. The complaint alleges very specific indirect benefits to Schwab from its use of the elements of the claimed system.  For example, the complaint discusses how the inventions in the asserted patents "minimize fraud and data theft," enhance "the underlying security of digital payments," and limit "the risk of the PAN being compromised or used fraudulently/without authorization."

---

[3] Schwab also argues that certain allegations (that various elements are "either hosted directly by Schwab or through an agent with whom Schwab has contracted to provide" them) are "unsupported by any allegations of fact, and are the type of 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' that are not entitled to the assumption of the truth."  Mot. at 8 (citing *Iqbal*, *Twombly*, and *Benton v. Whitesell-Green, Inc.*, Civ. No. 6:19-cv-00241-ADA-JCM, 2020 WL 96906, at *3 (W.D. Tex. Jan. 8, 2020).  In *Benton*, however, the complaint simply "lists out the elements of a general negligence claim without ***any factual substance*** to support such elements." *Id.* (emph. added). As explained above, Textile has done much more than list the elements of a patent infringement claim and has met and exceeded the requirements of *Iqbal*, *Twombly*, and *Benton*.

Compl. ¶¶ 14-19, 23, 46, 70, 95, 119.  Those benefits extend to issuers like Schwab because the benefits help to limit Schwab's liability for fraudulent use of debit and/or credit cards.

### B.       Textile's Complaint Plausibly Alleges Direct Joint Infringement By Schwab

To be liable for direct infringement, each step of a claimed method must be "performed by ***or attributable to*** a single entity."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (emphasis added).  An entity will be liable for another's acts: "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."  *Id*. at 1022-23.  Here, the complaint pleads a plausible theory of direct infringement at least based on Schwab's direction or control of its agents, affiliates, retailers and other business partners, and/or with its customers and end-users.  "[E]vidence may be sufficient to support an inference of direction or control when (1) the benefits of a particular service or product can be obtained only if third parties comply with instructions given by the defendant, and (2) the instructions direct the third parties to perform acts that constitute recited steps in the asserted method claims."  *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 1:18-cv-452, 2019 WL 330515, at *3 (D. Del. Jan. 25, 2019) (Bryson, Cir. J., by designation) (citing *Akamai* and *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017)).

Textile's complaint meets this standard. It alleges that Schwab and its affiliates "lead and are part of an interrelated group of companies which together comprise one of the country's largest banking and financial service entities, including under the Charles Schwab brand," that Schwab and its affiliates are "part of the same corporate structure for the making, offering, and using of the accused instrumentalities," and that Schwab and its affiliates "regularly contract with customers and other financial institutions and payment networks regarding equipment or services that will be provided by their affiliates on their behalf."  Compl. ¶¶ 3, 4, 6.

In addition, the complaint alleges that Schwab "took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentality in a manner that infringes[.]"  *Id*. ¶ 142.  These steps include, for example,

"advising or directing customers and end-users to use the Accused Instrumentality in an infringing manner; advertising and promoting the use of the Accused Instrumentality in an infringing manner; and/or distributing instructions that guide users to use the Accused Instrumentality in an infringing manner." *Id*. ¶ 143.  In *IOENGINE*, similar allegations were sufficient to plead a claim of joint infringement between the defendant and its customers.  2019 WL 330515, at *3; *see also Techno View IP, Inc. v. Sony Interactive Entertainment LLC*, No. SACV 17-01268-CJC(JCGx), 2018 WL 3031518, at *7 (C.D. Cal. Apr. 18, 2018) (plaintiff plausibly alleged direct infringement by defendants' instructing and encouraging third parties, including customers and users, to infringe by providing instructions and advertising how to use the accused video game consoles in an infringing manner).

Schwab ignores these and other allegations.  Instead, it argues that the complaint does not set forth "allegations of fact that plausibly support any joint infringement claim" because (1) the complaint does not use the phrase "joint infringement," (2) according to Schwab, "there are no allegations of fact that Schwab purportedly 'directs or controls others' performance' or that Schwab and any third parties somehow 'form a joint enterprise,'" (3) "the only use of 'joint' in the complaint is a single reference to Schwab and its undefined 'affiliates' allegedly being 'jointly and severally liable,'" and (4) Textile states that Schwab "directs or controls the use of the Accused Instrumentality" but does not mention "the direction or control of the performance of others." Mot. at 9.  Schwab's form over substance arguments fail when considered in light of the entire complaint.  As laid out above, Textile has plausibly alleged direct infringement by alleging that Schwab acted jointly with others.

## III.   TEXTILE SUFFICIENTLY PLEADED INDIRECT AND WILLFUL INFRINGEMENT

### A.   Textile Plausibly Alleged Knowledge And Conduct In Support Of Its Allegations Of Indirect Infringement And Willful Infringement

Indirect infringement under 35 U.S.C. § 271(b)-(c) and willful infringement require actual knowledge of, or willful blindness to, the infringed patent's existence.  *Global-Tech*

*Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011).  Here, Textile has plausibly pleaded at least post-filing[4] actual knowledge with respect to all of the asserted patents.  In addition, the complaint plausibly pleads the remaining elements of induced, contributory, and willful infringement.

Schwab requests that Textile's indirect infringement and willfulness claims be dismissed in their entirety for failure to adequately plead pre-suit knowledge.  Mot. at 10-11, 13, 14.  However, both claims may properly be based on post-suit conduct and knowledge as of the filing of the complaint.  *See, e.g., Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1315-16 (Fed. Cir. 2020) (rejecting defendant's claim that its "continued infringing activity after this suit was filed cannot support willfulness"); *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13–CV–365, 2014 WL 2892285, at *10 (W.D. Tex. May 12, 2014) ("Once the lawsuit is filed, there is no question that a defendant has actual notice of the patent infringement") (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1345-46 (Fed. Cir. 2012)); *Cywee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495-WCB, 2018 WL 3819392, at *2 (E.D. Tex. Aug. 10, 2018) (Bryson, Cir. J., by designation).[5]  The complaint alleges at least Schwab's post-suit knowledge of the patents-in-suit, its post-suit knowledge of its

---

[4] Curiously, Schwab appears to acknowledge an allegation that is ***not in Textile's complaint*** against Schwab: pre-suit notice of the 079 Patent and the 802 Patent.  Mot. at 10, 11.  Such an allegation is in Textile's complaint ***against Comerica***, whose motion Schwab appears to have duplicated nearly word-for-word.

[5] To support its position that pre-suit knowledge is required for indirect and willful infringement, Schwab cites *Aguirre v. Powerchute Sports, LLC*, No. SA-10-cv-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) and *Bos. Sci. Corp. v. Nevro Corp.*, No. CV 16-1163-CFC, 2021 WL 4262668 at *4 (D. Del. 2021). Mot. at 11. Both cases are plainly inconsistent with the Federal Circuit's decision in *Packet Intel.* and with this district's decision in *Affinity Labs*, notwithstanding any policy rationale espoused in an out of district case. Schwab also fails to address the other side of the policy rationale coin – why post-suit indirect and willful infringement should be categorically excused without pre-suit knowledge. While some defendants cease patent infringement activity when sued, this is not one of those cases. Textile has alleged as much in the Complaint. *See* Compl. ¶¶ 40, 64, 89, 113, 137.

alleged infringement, and its continued infringement despite that knowledge, Compl. ¶¶ 40, 64, 89, 113, 137—and Schwab does not (and likely cannot) deny it.

    **B.  Textile Plausibly Alleged Schwab's Specific Intent To Induce Infringement**

    Textile's complaint alleges facts relating to the intent element of induced infringement. First, the complaint identifies the accused instrumentality, alleging that Schwab has induced end-users to infringe by using the accused instrumentality, Compl. ¶¶ 3, 4, 6, 23, 46, 70, 95, 119, 141-42, and alleges that Schwab possessed the requisite specific intent by acting with "knowledge that the induced acts constitute infringement."  Compl. ¶¶ 144-145, 148.  It also alleges that "Charles Schwab took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentality in a manner that infringes one or more claims of the patents-in-suit, including, for example, at least Claim 1 of the 079 Patent, Claim 1 of the 802 Patent, Claim 3 of the 499 Patent, Claim 9 of the 659 Patent, and Claim 8 of the 454 Patent."  Compl. ¶ 142; *see also id*. ¶¶ 147, 148.  As explained above (section III.A), the complaint alleges knowledge of the patents and knowledge of infringement of the asserted patents, at least based on Schwab's deliberate and affirmative acts of infringement following notice of the complaint.  And the complaint alleges that Schwab specifically intended to induce infringement of the patents-in-suit and that it knew it had induced acts that constitute infringement.  *See, e.g.*, Compl. ¶¶ 144, 145, 148.  More is not required at the pleading stage, "because such detail is likely only to be revealed via discovery." *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 836 n.6 (E.D. Tex. 2019).

    Second, contrary to Schwab's assertion that the complaint's allegations "do <u>not</u> identify any specific third parties, do <u>not</u> identify any specific acts taken (or not taken) by Schwab, and do <u>not</u> identify any facts showing how Schwab induced 'others' to allegedly infringe," Mot. at 12, the complaint describes numerous specific acts of inducement and classes of information in support of Textile's inducement claims.  *See, e.g.*, Compl. ¶¶ 143 ("Such steps by Charles Schwab included, among other things, advising or directing customers and end users to use the Accused Instrumentality in an infringing manner; advertising and promoting the use of the

Accused Instrumentality in an infringing manner; and/or distributing instructions that guide users to use the Accused Instrumentality in an infringing manner."), 146 ("Charles Schwab directs or controls the use of the Accused Instrumentality nationwide through its own websites and in its own branches, including in Texas and elsewhere in the United States, and expects and intends that the Accused Instrumentality will be so used."), 144-45, 147 (describing additional acts); *see also id.* ¶¶ 23, 46, 70, 95, 119 (incorporating an exemplary screenshot of Schwab's website's description of services related to its debit cards, including its instruction and encouragement to "Make your phone your new wallet," to "[a]dd your Schwab Bank Visa Platinum Debit Card to your mobile wallet," and "[a]t checkout, just click, glance, or touch and hold your device near the reader to pay."). That alone is sufficient. *See, e.g., Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014) ("Providing instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement."); *Cywee Group*, 2018 WL 3819392 at *2 (holding that allegation that "Huawei provides manuals and instructions … and/or provides instructional and support materials on its website that teach and instruct its customers to operate those products in ways that practice the claimed invention" was sufficient to plead induced infringement for period in which Huawei had knowledge of the patents-in-suit); *see also Motiva*, 408 F. Supp. 3d at 831-32 ("[T]he provision of instructions by an accused infringer may indicate specific intent to induce infringement," and by "alleging those classes of evidence contain instructions on how to infringe," the complaint "has gone beyond mere speculation.")

Schwab's choice to characterize these multiple pages of allegations directed to Schwab's conduct, knowledge, and intent—specifically with respect to the accused instrumentality—as "vague, general and non-specific," or as "generalized allegations" of inducement through "marketing and sales tactics," Mot. at 12, is not supported by Schwab's caselaw. For example, two of Schwab's cases involve pleadings that are readily distinguishable from the detailed allegations in Textile's complaint. *See Affinity Labs*, 2014 WL 2892285 at *10 (finding the complaint to be "devoid of any reference of actual intent or knowledge of induced infringement"); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,

No. 6:20-cv-00876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (dismissing inducement allegations because plaintiff alleged only knowledge of the asserted patents, which standing alone "does not advance a plausible inference of induced infringement").  Another case is not even related to pleading standards.  *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (addressing induced infringement ***jury instructions***).  And the other cases ***support Textile's position***.  *Microsoft*, 755 F.3d at 905 ("Providing instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement."); *Parity Networks, LLC v. Cisco Sys., Inc.*, Case No. 6:19-cv-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (denying motion to dismiss allegations of ***pre-suit*** induced infringement).

### C.  Textile Plausibly Alleged Contributory Infringement

The complaint plausibly pleads a claim of contributory infringement of the asserted patents.  First, the allegations meet the knowledge components for the reasons explained above in Section III.A.  Second, the complaint alleges that third parties, including end users and customers, infringe the asserted patents.  *See, e.g.*, Compl. ¶¶ 150, 157.  Third, the complaint alleges that the accused instrumentality possesses special features that lack substantial noninfringing uses.  *See* Compl. ¶¶ 151, 152, 153.

Contrary to Schwab's assertions that "Plaintiff does not, and cannot, allege facts showing that" there is "no 'substantial noninfringing use'" or that the accused system is "'especially made or especially adapted' for infringing use," Mot. at 13, the complaint indeed contains the allegations that Schwab claims are missing:

- "The Accused Instrumentality has special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe …" Compl. ¶ 151.
- "As described above, the special features include securely authorizing specific transactions without providing a credit or debit card number to the merchant used in a manner that infringes [the asserted patents]."  *Id*. ¶ 152; *see also, e.g., id*. ¶¶ 23-35, 46-59, 70-84, 95-108, 119-132 (alleging use of products in infringing manner)

- "The special features constitute a material part of the invention of one or more of the claims of the [asserted patents] and are not staple articles of commerce suitable for substantial non-infringing use." *Id*. ¶ 153.

Schwab labels the complaint's allegations as "merely conclusory legal assertions lacking any factual support," Mot. at 13, but it simply ignores the ample factual allegations describing the accused instrumentality's special features, such as securely authorizing specific transactions without a credit or debit card number being provided to the merchant. No more is required at the pleading stage "because such detail is likely only to be revealed via discovery." *Motiva*, 408 F. Supp. 3d at 836 n. 6.

Because the complaint alleges that the accused features are especially adapted for infringement, it raises a plausible inference that no substantial noninfringing uses exist. *See id*. ("Having plausibly alleged that [Defendant's] products have a software component that maps upon a claim limitation, the Court finds that [Plaintiff] has also alleged a lack of substantial noninfringing uses." (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009))); *see also id*. at 835 ("For purposes of a motion to dismiss under 12(b)(6), a well-pled allegation that an accused product (or its component) has 'no substantial noninfringing uses' is independently sufficient to plead the knowledge element of contributory infringement."). The complaint's allegations easily meet the requirement to plead a plausible claim for contributory infringement. *See Lifetime Indus.*, 869 F.3d at 1381.[6]

Schwab's argument purporting to identify non-infringing uses, *see* Mot. at 13, must fail. Here, Schwab invites error by presenting factual allegations from outside the complaint and asking the Court to weigh competing sets of facts and inferences at the motion to dismiss stage.[7] *E.g., Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010);

---

[6] *See also Motiva*, 408 F. Supp. 3d at 836 n. 6 ("Requiring Motiva to **prove** that HTC's software component only has a single use—instead of simply alleging as much—would 'effectively require[] [Motiva] to prove, pre-discovery, the facts necessary to win at trial.").

[7] Indeed, weighing disputed issues of material fact is not proper even at the summary judgment stage. That is the role of the factfinder, not the Court.

*Lormand*, 565 F.3d at 267 ("[U]nder Rules 8(a)(2) and 12(b)(6), at the pleading stage, the plaintiff is only required to plead a plausible cause of action; we are not authorized or required to determine whether the plaintiff's plausible inference … is equally or more plausible than other competing inferences …").  To the extent Schwab wishes to raise a factual dispute regarding substantial non-infringing uses, these allegations belong in its answer, and the parties must have the opportunity to take discovery and present evidence relevant to this claim.

Even if the Court were to consider Schwab's argument, it would still fail because the alleged non-infringing features it identifies are "separate and distinct" from the accused instrumentality that Textile has specifically accused.  *See generally, Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330–31 (Fed. Cir. 2010) (holding that components argued to have substantial non-infringing uses were "separate and distinct" features that had to be treated separately in analyzing contributory infringement).  When an accused contributory infringer argues that its product is suitable for substantial non-infringing use, the Federal Circuit has "sought to assure that the accused contributory infringer is not 'permitted to escape liability as a contributory infringer merely by embedding the infringing apparatus in a larger product with some additional, separable feature before importing and selling it.'"  *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 524 (Fed. Cir. 2016) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009)).  A court "must determine whether the infringing component is 'separate and distinct' from other functions of the composite product."  *Id*. (citing *Fujitsu*, 620 F.3d at 1330).  The Federal Circuit explains that "[i]n the cases where we have directly addressed this issue, we have generally been fairly liberal in finding the accused components separate."  *Id*. (citing *Fujitsu*, 620 F.3d at 1330–31; *Lucent*, 580 F.3d at 1321; *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008)).

Here, Schwab focuses on ***separate features*** of ***the accused payment authorization system*** (processing traditional uses of a credit or debit card) instead of addressing the ***infringing feature*** of the ***accused payment authorization system***, which authenticates or authorizes requests to pay ***without providing the card numbers to merchants***.  Mot. at 13 (arguing that there are

substantial non-infringing uses because "[the] accused credit or debit cards are well-known, conventional products that cardholders may use in myriad non-infringing ways including, for example, swiping the card at a merchant point-of-sale terminal, inserting the card into a 'chip reader' at a merchant point-of-sale terminal, or manually entering card information in the course of an online transaction.")  The uses identified by Schwab are not uses of the ***accused instrumentality***.  *See, e.g.*, Compl. ¶¶ 23, 46, 70, 95, and 119 (identifying, as the accused instrumentality, the accused payment authorization system, which authenticates or authorizes requests to pay without providing the card numbers to merchants and enables Schwab's provision of the Apple Pay service, the Samsung Pay service, and the Google Pay service (shown in the screenshot from Schwab's website)).  The proper inquiry is not whether payment processing for uses of a card outside of its use in such a system—said processing of those uses being a separate and distinct component of the accused instrumentality—infringes, but whether the accused payment authorization system, which authorizes requests to pay without providing card numbers to merchants, has substantial non-infringing uses.  It does not, and Schwab does not argue that it does.

Instead, Schwab boldly accuses Textile of (1) attempting "to avoid the true nature of the accused debit cards and/or credit cards" and (2) using "semantics to try to avoid substantial noninfringing uses" by defining "Accused Instrumentality" narrowly so that it includes only allegedly infringing uses.  Mot. at 13-14.  Textile has done no such thing.  Instead, it is Schwab who attempts to attempts to avoid liability by re-defining the accused instrumentality (as being the credit or debit cards themselves instead of the defined accused instrumentality, which is the accused payment authorization system).  For example, Schwab incorrectly states that "Textile accuses credit and/or debit cards of allegedly infringing the Asserted Patents[.]"  *Id* at 13.  Schwab also refers to non-infringing aspects "***of the accused cards***," stating that these aspects "are 'defining features' of the accused cards and 'not merely additional, separable features.'"  *Id*. (citing *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327-28 (Fed. Cir. 2009) (finding, ***on a full record on summary judgment***, that the "ball and socket joint, interrupted ribbing, and

16

rubber o-ring" of an accused blender were "defining features" of that blender)).  Unlike the blender's properties in *Vita-Mix*, the alleged non-infringing uses of cards are not "defining features" of the **accused system**.  *Id.*  Indeed, Schwab offers, provides, and uses the accused system in order to reduce fraud by **reducing** uses of those cards outside of a digital wallet (*e.g.*, uses identified by Schwab that gives the merchant card numbers).  Those unfavored, un-secure uses of cards alone cannot be "defining features" of a system designed and offered to reduce such uses.

### D.  Textile Plausibly Alleged Willful Infringement

Textile plausibly alleged willful infringement by Schwab.  Willfulness requires proof that the defendant "actually knew or should have known that its actions constituted an unjustifiably high risk of infringement." *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (rejecting challenge to jury instruction on willfulness).  Despite Schwab's arguments to the contrary,[8] the complaint alleges that Schwab has had knowledge of the patents at least since receiving notice of the complaint, that Schwab's customers are directly infringing, and that Schwab has encouraged (and continues to encourage) them to infringe. (Compl. at ¶¶ 9-10, 40-41, 64-65, 89-90, 113-114, 137-138, 141-159). These allegations are sufficient to state a claim for willful infringement at the pleading stage. *See, e.g., Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp.3d 928, 939 (E.D. Tex. 2016) (Bryson, J., by designation) (rejecting argument that plaintiff failed to plead facts showing that defendants' "actions constituted an unjustifiably high risk of infringement" because plaintiff "has pleaded knowledge of the patent, that defendants' customers are infringing, and that the defendants encouraged this infringement").

---

[8] Schwab argues that "Textile fails to allege that Schwab had notice that its conduct amounted to any alleged infringement of the Asserted Patents …, and its deficient allegations fail to support any willful infringement claim."  Mot. at 15-16 (citing *Monolithic*, 2021 WL 3931910 at *5). Unlike the complaint in *Monolithic*, however, the Complaint here alleges not only knowledge but also Defendant's continued and knowing infringement, despite receiving notice of its infringement at least through the Complaint. *See, e.g.,* Compl. ¶ 40.

Schwab argues that Textile's willfulness allegations are flawed because they do not show "egregious" behavior.  Mot. at 15.  But whether infringing conduct was sufficiently "egregious" is not an element of willful infringement at all.  This principle was confirmed by the Federal Circuit's recent decision in *SRI*.  *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323 (Fed. Cir. 2021) ("*SRI*"). There, the Federal Circuit expressly noted that "*Halo* … did not disturb the substantive standard for subjective willfulness," and that "under *Halo*, **the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement**."  *Id.*, 14 F.4th at 1328 n.1, 1330 (emph. added).  And this Court has previously recognized as much.  *See Parity Networks*, 2019 WL 3940952 at *3 ("To state a claim for willful infringement, 'a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent, and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.") (citing *Valinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *6 (D. Del. May 29, 2018)).  To the extent Schwab's cases state that egregiousness is required, those cases were decided prior to *SRI*, which clearly holds that egregious conduct is not an element of willfulness.  *Compare SRI*, 14 F.4th 1323, 1326 n.1, 1327 *with Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *3 (W.D. Tex. Nov. 30, 2018); *M&C Innovations, LLC v. Igloo Prod. Corp.*, Case No. 4:17-cv-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018).

Instead, "egregiousness" is something for the court to consider in exercising its discretion to enhance damages after the jury's finding of willfulness.  *See SRI*, 14 F.4th at 1329-1330 ("To eliminate the confusion created by our reference to the language 'wanton, malicious, and bad-faith' in *Halo*, we clarify that it was not our intent to create a heightened requirement for willful infringement.  Indeed, that sentence from *Halo* refers to 'conduct warranting **enhanced damages**,' **not conduct warranting a finding of willfulness**.") (emph. added); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2018 WL 2149736, at *8 (E.D. Tex. 2018) ("the jury must decide whether the infringement was **intentional**, and then the court must decide whether the intentional conduct was **egregious** enough to justify enhanced damages") (emph. added), *vacated*

*on other grounds*, 955 F.3d 1317 (Fed. Cir. 2020); *see also Valinge Innovation AB*, 2018 WL 2411218, at *6-9 (collecting and analyzing cases, and concluding that egregiousness is not a required element of willfulness, in part because "the *Halo* Court did not consider 'egregiousness' to be a necessary component of willful infringement"), *cited with approval by Parity Networks*, 2019 WL 3940952, at *3.

In any event, and contrary to Schwab's arguments, Textile has alleged more than a "run-of-the-mill" infringement case, Mot. at 15 (citing *Halo*; *Meetrix IP*; *M&C*).  Indeed, Textile alleged that "Charles Schwab has had actual knowledge of [the asserted patents] at least as of the date when it was notified of the filing of this action.  By the time of trial, Charles Schwab will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of [the asserted patents]."[9]  *See* Compl. ¶¶ 40, 64, 89, 113, 137.  These allegations show more than "garden variety infringement" because they show that Schwab deliberately continues its infringing behavior, taking no action to design around the patent or otherwise avoid infringement, despite notice of infringement through the filing of the complaint.  In the event the Court disagrees that these allegations are sufficient to support post-suit knowledge, Textile requests leave to amend to add additional allegations, including additional allegations supporting inducement and willfulness subsequent to and based on knowledge from the filing or service of the original complaint.  *See infra* Part IV; *Bush Seismic Techs. LLC v. Am. Gem Soc.*, No. 2:14-cv-1809-JRG, 2016 WL 9115381, at *3 (E.D. Tex. Apr. 13, 2016).

## IV.    IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED

If the Court rules that any of Textile's claims are not adequately pleaded, Textile requests an opportunity to amend its complaint to address any deficiencies that the Court finds, including

---

[9] Schwab fails to address this allegation when it cavalierly states that "the only references to willfulness in the Complaint are inadequate, perfunctory and conclusory statements."  Mot. at 14-15 (citing *Inhale, Inc. v. Gravitron, LLC*, No. 1-18-cv-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) for the proposition that "[b]road legal conclusions cannot support a willful infringement claim.").

the opportunity to take relevant discovery prior to amendment, or, at a minimum, to incorporate its preliminary infringement contentions by reference once those are submitted. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016) (finding an abuse of discretion for the district court's failure to grant leave to amend and explaining "the language of this rule evinces a bias in favor of granting leave to amend," and "[a] district court must possess a substantial reason to deny a request.") (citations and internal quotations omitted).  "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.  Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Potter v. Bexar Cnty. Hosp. Dist.*, 195 Fed. Appx. 205, 208 (5th Cir. 2006) (internal quotations omitted). Granting leave to amend is especially appropriate when dismissing for failure to state a claim. *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977).

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Schwab's motion to dismiss.

Dated: January 17, 2022                    Respectfully submitted,

/s/ *C. Ryan Pinckney*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
ANTONELLI, HARRINGTON
& THOMPSON LLP

4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
815 South Broadway Avenue
Tyler, TX 75701
(903) 593-7000


*Attorneys for Textile Computer Systems, Inc.*